UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AMBIORIX DUVAL FLORES,

                Petitioner,

    v.

UNITED STATES OF AMERICA,

                Respondent.

No. 22-CV-4040 (KMK)

---

UNITED STATES OF AMERICA

    v.

AMBIORIX DUVAL FLORES,

                Defendant.

No. 21-CR-66 (KMK)

<u>OPINION & ORDER</u>

---

<u>Appearances</u>:

Ambiorix Duval Flores
FCI Fort Dix
Joint Base MDL, NJ
*Pro Se Petitioner*

Derek Wikstrom, Esq.
United States Attorney's Office
New York, NY
*Counsel for Respondent*

KENNETH M. KARAS, United States District Judge:

      Ambiorix Duval Flores ("Flores" or "Petitioner"), proceeding pro se, has filed a Petition for a Writ of Habeas Corpus (the "Petition"), pursuant to 28 U.S.C. § 2255, to vacate, set aside, or correct his conviction for conspiring to distribute and possess with intent to distribute

fentanyl, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A).  (*See generally* Pet. for Writ of Habeas Corpus ("Pet.") (Dkt. 1, 22-CV-4040; Dkt. s80, 21-CR-66).)[1]  In the Petition, Flores argues that his counsel was ineffective for three reasons.  For the foregoing reasons, the Petition is denied.

I.  Background

    A.  Factual Background

In February 2020, Flores and Luis Garcia-Lora, who later became a co-defendant, sold fentanyl to a confidential informant ("CI") working with the Drug Enforcement Administration ("DEA").  (Pre-Sentence Rep. ("PSR") ¶ 10 (Dkt. 67, 21-CR-66).)  The CI arranged to buy narcotics through another individual ("uncharged co-conspirator").  (*Id.* ¶¶ 11–12.)  After an initial deal failed to materialize, the uncharged co-conspirator instructed the CI to meet in the vicinity of 207th Street in Manhattan.  (*Id.* ¶¶ 13–14.)  When the CI arrived there, Flores provided a large quantity of pills—which had been pressed to look like prescription drugs, but which were actually fentanyl—and told him that another co-conspirator, who turned out to be Garcia-Lora, would bring additional pills.  (*Id.* ¶¶ 15–17.)  Soon thereafter, Garcia-Lora arrived and gave additional fentanyl pills to the CI.  (*Id.* ¶¶ 18–19.)  In total, the pills that Flores and Garcia-Lora delivered to the CI weighed approximately 1.5 kilograms. (*Id.* ¶ 20.)  DEA arrested both individuals, who waived their *Miranda* rights and confessed.  (*Id.* ¶¶ 19–22.)

    B.  Procedural History

On February 18, 2020, Flores and Garcia-Lora were charged with a narcotics distribution conspiracy in a complaint.  (*See* Dkt. 1, 21-CR-66.)  On February 4, 2021, with Flores's consent

---

[1] Certain of the Parties' papers were filed on Petitioner's criminal docket, Case No. 21-CR-66, and certain on Petitioner's civil docket, Case No. 22-CV-4040.  The docket citations indicate on which docket each document was filed.

(*see* Dkt. 49, 21-CR-66), the Government filed felony Information 21 CR 66 (KMK) (the "Information"), charging Flores in one count with conspiring to distribute more than 400 grams of fentanyl, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). (Dkt. 53 ¶¶ 1–3, 21-CR-66.) Flores was arraigned, in a videoconference proceeding conducted pursuant to the CARES Act and with Flores's on-the-record consent, before Magistrate Judge Judith C. McCarthy. (Dkt. (minute entry for Feb. 4, 2021), 21-CR-66.) After a series of colloquies establishing his competence, and his knowing and voluntary waivers of his rights to hold the proceeding in person and to be indicted by a grand jury, Flores entered a plea of not guilty and the case was assigned to this Court. (*See* Hr'g Tr. 2–12 (Dkt. 83, 21-CR-66).)

On May 20, 2021, Flores entered a guilty plea to the sole count of the Information, pursuant to a plea agreement. (Dkt. (minute entry for May 20, 2021), 21-CR-66.) In the plea agreement, Flores and the Government stipulated to a Guidelines range of 70 to 87 months' imprisonment. (Plea Agreement at 3 (Dkt. 84 Ex. A, 21-CR-66).) The plea agreement also contained an appellate-waiver provision, in which, among other things, Flores agreed not to appeal or collaterally challenge any sentence less than or equal to 87 months in prison, but the agreement expressly preserved Flores' rights to assert claims of ineffective assistance of counsel. (*Id.* at 4). After conducting a full plea proceeding that complied with Federal Rule of Criminal Procedure 11, the Court accepted Flores's guilty plea. (*See* Hr'g Tr. (Dkt. 75, 21-CR-66).)

On November 16, 2021, the Court imposed sentence.[2] The Court began the proceeding by confirming that there were no objections to the PSR and then adopting the factual findings in the report. (Sentence Trans. at 3 (Dkt. 84 Ex. B, 21-CR-66).) The Court heard from counsel and

---

[2] The transcript of the sentencing is attached as Exhibit B to the Government's Opposition. However, because the transcript contains discussion of Flores' health, it has not been publicly filed.

Flores. Thereafter, the Court calculated the Guidelines, concluding that the applicable Guidelines range was 70 to 87 months, and that because Flores qualified for safety-valve relief, the otherwise-applicable 10-year mandatory minimum did not apply. (*Id.* at 15.) The Court then discussed at length the Section 3553(a) sentencing factors. (*Id.* at 15–20). The Court acknowledged that Flores's personal history and characteristics were "mitigating," that his offense conduct was characterized to be "aberrant behavior," and that Flores faced some "unique" "health issues" which were "certainly a factor especially in the context of a pandemic." (*Id.* at 15–17.) However, the Court also explained that while Flores's "role . . . may not have been the most serious out there, the conduct categorically speaking is quite serious." In particular, the Court commented that "fentanyl is killing people all over the country, all walks of life." (*Id.* at 18). The Court considered all the Section 3553(a) factors, but focusing on weighing the offense conduct and deterrence against Flores's mitigating personal history and characteristics, the Court concluded that the sentence that was sufficient but no more than necessary to achieve the goals of the sentencing laws was sentence of 60 months in prison. (*Id.* at 19–20.)

The Judgment of Conviction was signed on November 30, 2021, and entered on the docket on December 3, 2021. (Dkt. 76, 21-CR-66.) Flores did not appeal. On May 13, 2022, Flores mailed his Section 2255 Petition, (Pet. at 12)[3], which was received by the Court and docketed on May 17, 2022, (*id.* at 13). On May 19, 2022, the Court ordered the Government to respond to the Petition within sixty days. (Dkt. 81, 21-CR-66.)

---

[3] Flores' Petition contains page numbers that differ from the ECF pagination at the top of the document. Unless otherwise noted, citations to the Petition in this Order refer to the ECF page number.

II.  Discussion

    A.  Standard of Review

A prisoner in federal custody may move to vacate, set aside, or correct his sentence only "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).[4]  "Because collateral challenges are in 'tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack.'" *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010) (quoting *Ciak v. United States*, 59 F.3d 296, 301 (2d Cir. 1995)).  To prevail on a collateral attack of a final judgment under § 2255, a petitioner must demonstrate either the existence of a "constitutional error . . . or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice."  *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (quotation marks omitted); *accord Cuoco v. United States*, 208 F.3d 27, 30 (2d Cir. 2000); *Rodriguez v. United States*, No. 11-CV-2957, 2013 WL 6171618, at *3 (S.D.N.Y. Nov. 25, 2013), *aff'd*, 679 F. App'x 41 (2d Cir. 2017).

In ruling on a § 2255 petition, the district court is required to hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no

---

[4] 28 U.S.C. § 2255(a) provides, in full:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

relief." 28 U.S.C. § 2255(b). Moreover, a hearing is not required where the petitioner's allegations are "vague, conclusory, or palpably incredible." *Machibroda v. United States*, 368 U.S. 487, 495 (1962). To justify a hearing, the petition "must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle [the petitioner] to relief." *Gonzalez v. United States*, 722 F.3d 118, 131 (2d Cir. 2013). Finally, because Petitioner is appearing pro se, the Court construes the Petition and his other submissions "liberally and interpret[s] [them] to raise the strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis in original) (citation quotation marks omitted); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." (italics and citation omitted)).

    B. Analysis

        1. Ineffective Assistance – Standard of Review

As noted, Petitioner claims that his counsel was ineffective. Claims of ineffective assistance of counsel are evaluated under the framework set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). "First, the [petitioner] must show that counsel's performance was deficient." *Strickland*, 466 U.S. at 687. "Second, the [petitioner] must show that the deficient performance prejudiced the defense." *Id.*

A petitioner will not meet the first prong based solely on disagreements with counsel's strategy or advice. Indeed, there is a "strong presumption" that counsel's conduct fell within the vast spectrum of reasonable assistance, and it is the petitioner's burden to demonstrate "that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986);

*see also Tanveer v. United States*, No. 06-CR-1135, 2019 WL 430262, at *4 (S.D.N.Y. Feb. 4, 2019) (same). Thus, to satisfy this prong, a petitioner must demonstrate that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Strickland*, 466 U.S. at 687. In assessing counsel's conduct, "a reviewing court must judge his conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct,' and may not use hindsight to second-guess his strategy choices." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (quoting *Strickland*, 466 U.S. at 690).

To satisfy the second prong, "[the petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding below would have been different." *United States v. Caracappa,* 614 F.3d 30, 46 (2d Cir. 2010) (citation omitted)(alteration adopted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding[,]" as "[v]irtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Id.* at 693 (citation omitted). " '[P]urely speculative' arguments about the impact of an error do not establish prejudice." *DeCarlo v. United States*, Nos. 11-CV-2175, 08-CR-523, 2013 WL 1700921, at *4 (S.D.N.Y. Apr. 17, 2013) (alteration in original) (quoting *United States v. Weiss*, 930 F.3d 185, 199 (2d Cir. 1991)). Moreover, "a court hearing an ineffectiveness claim must consider the totality of the evidence . . . . [A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Strickland*, 466 U.S. at 695–96.

<u>2. Waiver</u>

Flores raises three grounds for his Section 2255 Petition. First, he contends that "defense counsel never investigated the locus or the situs of the alleged criminal conduct in order to establish the critical issue as to whether the Government obtained the proper territorial jurisdiction to have federally criminalized the conduct stated in the criminal complaint, information[,] or indictment in this alleged stated criminal case." (Pet. at 4.) Second, he complains that defense counsel "fraudulently signed a waiver of indictment form," which "counsel signed [in] his own name and signature in order to violate this defendant's right to the presentment of a[n] indictment, and by doing so violated this defendant's 5th and 6th Amendment rights." (*Id.* at 5.) Third, he claims that defense counsel was ineffective for failing to "raise the issue that the complaint on record . . . was signed by a local sheriff or officer named John J. Kerwick who is not authorized by law . . . to file or enforce federal law . . . within the meaning of Section 2510(7) of Title 18." (*Id.* at 7.)

On their face, Petitioner's ineffective assistance claims all relate to events before his guilty plea. Yet, after these supposed instances of ineffective assistance, Petitioner pled guilty unconditionally, admitting that he had committed the charged crime within the Southern District of New York by conspiring to distribute a large quantity of fentanyl in Manhattan. Therefore, Petitioner's ineffective assistance claims are waived.

It is a fundamental rule that "[a]n ineffective assistance of counsel claim survives the guilty plea or the appeal waiver only where the claim concerns 'the advice . . . received from counsel.'" *Parisi v. United States*, 529 F.3d 134, 138 (2d Cir. 2008) (citation omitted). That rule follows from the more general principle that a knowing and voluntary plea waives *all*

8

non-jurisdictional claims of antecedent legal or constitutional error. Simply put, as the Supreme Court has explained: "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). On this basis, the Second Circuit and lower courts in the Second Circuit have rejected Sixth Amendment claims relating to the deprivation of the right to counsel where the deprivation or ineffective assistance occurred before an unconditional plea and did not undermine the bona fides of the plea itself. *See, e.g.*, *Parisi*, 529 F.3d at 138 ("A defendant who pleads guilty unconditionally while represented by counsel may not assert independent claims relating to events occurring prior to the entry of the guilty plea." (citation omitted)); *United States v. Coffin*, 76 F.3d 494, 498 (2d Cir. 1996) ("Coffin's guilty plea effectively waived all ineffective assistance claims relating to events prior to the guilty plea."); *Miller v. LeClair*, No. 20-CV-1546, 2024 WL 1797341, at *13 (E.D.N.Y. Apr. 25, 2024) ("[B]y pleading guilty, Petitioner waived his challenges to counsel's representation which challenges were unrelated to his plea."); *Decker v. United States,* Nos. 22-CV-5467, 20-CR-104, 2023 WL 5001438, at *6 (S.D.N.Y. Aug. 4, 2023) (rejecting ineffective assistance claim related to pre-trial discovery, because it did not "pertain to the voluntary and intelligent character of the guilty plea") (citation and quotation marks omitted); *see also United States v. Peña*, 762 F. App'x 34, 38 (2d Cir. 2019) (rejecting claim of pre-plea ineffective assistance of counsel, which did not include an argument that the plea was involuntary or unintelligent); *United States v. Blocker*, 269 F. App'x 117, 120 (2d Cir. 2008) ("Blocker also waived his ineffectiveness claim by pleading guilty to the drug

9

possession charge arising from his October 3, 2002 arrest. By virtue of that plea, Blocker waived any constitutional challenges to the drug possession charge that he may have had prior to entering into the plea, barring a challenge to the voluntary or intelligent nature of the plea itself.").

Because Petitioner has made *no* allegation that his claims of ineffective assistance in any way made his plea involuntary or unintelligent, he waived these claims when he pled guilty.

### 3. Merits

#### a. Territorial Jurisdiction

Petitioner's first ground—that defense counsel was ineffective for failing to investigate "the locus or the situs" of the crime—is utterly without merit. Simply put, where Petitioner's crime occurred was never in dispute. At his plea, he told the Court, *under oath*, that he delivered drugs "[i]n Manhattan." (Hr'g Tr. 32–33 (Dkt. 75, 21-CR-66).) The PSR's factual recitation—to which Petitioner did not object, and which the Court adopted as its findings of fact at sentencing—likewise established that Petitioner delivered drugs to a parking lot on West 207th Street in Manhattan. (*See* PSR ¶¶ 13–15).

Undaunted, Petitioner suggests that, had defense counsel investigated where the crime occurred, he might have been able to contest "the critical issue as to whether the Government obtained the proper territorial jurisdiction to have federally criminalized the conduct stated in the . . . Information." (Pet. at 4). Even granting the liberal construction to which pro se filings are entitled, this argument is a dead end. This Court's "territorial jurisdiction" is the Southern District of New York. Manhattan, where Flores was arrested and where he delivered narcotics, is, and always has been, in the Southern District of New York. *See, e.g.*, *Panama R. Co. v. Johnson*, 289 F. 964, 981 (2d Cir. 1923) ("[T]he

borough of Manhattan is in the Southern [D]istrict of New York[.]"). This is a matter of geographic fact that cannot be disputed, and no matter how much counsel might have "investigated" the matter, the answer always would have been the same: The crime to which Petitioner pled took place in the Southern District of New York. Furthermore, it would have been frivolous to argue that the Government had not "federally criminalized the conduct stated in the criminal complaint, information[,] or indictment[,]" (Pet. at 4), as Petitioner was charged with and pled guilty to federal narcotics offenses, s*ee* 21 U.S.C. §§ 841, 846 (federally criminalizing the conduct charged in the complaint and the Information in this case); *cf. Gonzalez v. Raich*, 545 U.S. 1, 15–22 (2005) (upholding application of the federal Controlled Substances Act to even purely intrastate conduct under the Commerce Clause).

Therefore, defense counsel was not ineffective for declining to further investigate where the crime occurred, or whether "territorial jurisdiction" was somehow lacking in the Southern District of New York over a fentanyl-distribution offense that occurred principally in Manhattan. Thus, the failure to investigate more does not mean that his representation fell below an objective standard of reasonableness under the first prong of *Strickland*. As for *Strickland*'s second prong, Petitioner cannot have been prejudiced by defense counsel's alleged failure to investigate where the crime took place because no amount of investigation would have changed that the conduct indisputably took place within the Southern District of New York and was a federal crime.

### b. Fraudulent Waiver Form

Petitioner also claims that the waiver-of-indictment form in this case was invalid because, he claims, counsel "fraudulently signed a waiver of indictment form," and that "counsel signed his own name and signature in order to violate this defendant's right to the presentment of a[n] indictment, and by doing so violated this defendant's 5th and 6th Amendment rights." (Pet. at 5). This is a baseless claim that is belied by the record. Indeed, the record confirms that defense counsel signed his own name on Petitioner's signature line on the waiver form. That signature line reads, in full, "[a]fter discussion with client by: counsel, Calvin D. Garber" and then bears Mr. Garber's signature. (Dkt. 49, 21-CR-66). But that fact does not establish that counsel "fraudulently" signed for Petitioner or otherwise violated his rights. The transcript of the arraignment makes clear that counsel's signing the form on his client's behalf was entirely proper. After Judge McCarthy explained to Flores his right to insist on the presentation of an indictment to a grand jury, Judge McCarthy, defense counsel, and Petitioner (who was under oath, *see* Dkt. 83 at 5, 21-CR-66) had the following colloquy about the waiver-of-indictment form:

THE COURT: . . . Ms. Hummel [*i.e.* the Courtroom Deputy], could you please arraign the defendant on the waiver of indictment? Ms. Hummel, hold on one second. I notice this has been signed by Mr. Garber after discussions with his client. So, Mr. Garber, if you can place on the record what you did to review the Waiver of Indictment with your client?

MR. GARBER: I discussed it with him at the prior occasion when I signed it on his behalf. I discussed it with him today what it is. I explained the full grand jury process with him and explained that he was giving up the fact that the case could have gone to the grand jury, and he is consenting to being processed by an information and waiving an indictment. I have had that translated to him by an interpreter, and the answer is it's been fully explained to him twice.

THE COURT: Thank you. Did he give you permission to sign this form?

MR. GARBER: Yes.

THE COURT: Ms. Hummel, can you please arraign Mr. Flores on the Waiver of Indictment?

THE DEPUTY CLERK: Mr. Flores, I have before me a Waiver of Indictment form, which was signed on your behalf by your counsel. Did you have your attorney sign this form on your behalf voluntarily?

THE DEFENDANT: Yes.

THE DEPUTY CLERK: And before having your attorney sign your name to this waiver, did you discuss the Waiver of Indictment with your attorney?

THE DEFENDANT: Yes.

THE DEPUTY CLERK: And did your attorney explain this waiver to you?

THE DEFENDANT: Yes.

THE DEPUTY CLERK: Do you understand that you are under no obligation to waive indictment?

THE DEFENDANT: Yes.

THE DEPUTY CLERK: And do you also understand that if you do not waive indictment, and if the government wants to prosecute you, they will have to present your case to a grand jury, which may or may not indict you?

THE DEFENDANT: Yes.

THE DEPUTY CLERK: And do you understand what a grand jury is?

THE DEFENDANT: Yes.

(*Id.* at 8–10.) After that exchange, Judge McCarthy accepted Petitioner's written waiver of his right to be indicted as knowing and voluntary. (*Id.* at 11–12.)

Petitioner claims that counsel's signing the waiver form on his behalf was "fraudulent" is belied by both counsel's explanation of how he came to sign the form and Petitioner's own sworn statement that he had his lawyer sign the form on his behalf voluntarily. Indeed, this was the typical and lawful practice during the height of the COVID-19 pandemic, since defendants and their counsel often could not physically be in the same place. Recognizing that reality, the Chief Judge of this District issued a standing order permitting defense counsel to sign

13

forms on behalf of their clients in light of the pandemic. *See In re Coronavirus/COVID-19 Pandemic*, Standing Order re Signatures and the Form of Consents and Waivers in Criminal Cases, 20 Misc. 174 (CM) (S.D.N.Y. Mar. 13, 2020) (ordering that "where a defendant's signature is called for, either defense counsel or the presiding judge may sign on the defendant's behalf if the defendant, after an opportunity to consult with counsel, consents"). Given this undisputed record, the Court has no trouble concluding that defense counsel did not fall below *Strickland*'s objective standard of reasonableness by complying with the terms of that standing order and signing a form after being authorized to do so by his client. Thus, there is no merit to Petitioner's Sixth Amendment claim.

To the extent Petitioner's second ground is a separate constitutional claim—that his Fifth and Sixth Amendment rights were violated because he did not knowingly and voluntarily agree to waive indictment—it fares no better. A constitutional claim on this basis would fail. To begin, such a claim is waived, both for the same reasons discussed above (*i.e.* that a defendant's "knowing and voluntary guilty plea waives all nonjurisdictional defects in the prior proceedings," *Coffin*, 76 F.3d at 496 (collecting cases), and because of the plea agreement. Petitioner agreed not to appeal or collaterally challenge—other than on ineffective-assistance grounds—any sentence within or below the Guidelines range. (Dkt. 85 at 4, 21-CR-66). That waiver, which Judge McCarthy's Rule 11 colloquy confirmed was knowing and voluntary, is presumptively valid and enforceable. *See United States v. Riggi*, 649 F.3d 143, 147 (2d Cir. 2011) ("We have repeatedly upheld the validity of appeal waivers if they are knowingly, voluntarily, and completely provided by the defendant." (quoting *United States v. Gomez-Perez*, 215 F.3d 315, 318 (2d Cir. 2000) (quotation marks omitted)).

Petitioner's second claim also is procedurally defaulted. A defendant cannot use Section 2255 to raise a claim (other than ineffective assistance) that could have been raised on direct appeal but was not. Such a claim has been "procedurally defaulted." *Bousley v. United States*, 523 U.S. 614, 622 (1998). To overcome procedural default, a defendant must establish either "cause and actual prejudice" or "actual innocence." *Id.* (citation and quotation marks omitted). Petitioner has not done, and cannot do, either. His explanation for failing to raise this issue on direct appeal is simple: He was "advised by counsel" that he "gave up all my appeal rights." (Pet. at 5.) However, the waiver of the right to appeal does not constitute "cause" overcoming a procedural default, *United States v. Pipitone*, 67 F.3d 34, 38 (2d Cir. 1995), and Petitioner has not identified any other possible cause, or any arguable prejudice, for failing to raise this claim on direct appeal.

Finally, the claim fails on the merits. At his arraignment, Petitioner was placed under oath, his competency was established in a colloquy with Judge McCarthy, his grand jury right was explained to him in detail, and he confirmed that he understood and was voluntarily waiving his right to insist on an indictment. That his attorney signed the form, instead of Petitioner, is of no consequence. The record establishes that the waiver was knowing and voluntary and that is all that must be so for the waiver to be valid. *See, e.g.*, *United States v. Spencer*, 995 F.2d 10, 12 (2d Cir. 1993) (defendant waived right to counsel despite refusing to sign waiver form); *United States v. Booth*, 583 F. Supp. 3d 545, 553 (S.D.N.Y. 2022) (finding knowing and voluntary waiver of Fifth Amendment rights even though defendant did not sign a waiver form). In fact, the rules specifically contemplate that the right to be indicted—unlike certain other rights—may be waived in open court, without the need for a written waiver. *Compare* Fed. R. Crim. P. 7(b) (defendant may waive indictment and

15

waiver may be obtained "in open court and after [the defendant's] being advised of the nature of the charge and of the defendant's rights"), *with, e.g.*, Fed. R. Crim. P. 10(b)(2) (waiver of defendant's right to be present for arraignment must be contained "in a written waiver signed by both the defendant and defense counsel"); Fed. R. Crim. P. 23(a)(1) (defendant's waiver of jury trial right must be "in writing").  Thus, the Court rejects this claim.

### c. Task Force Officer's Signature

The final ground of Petitioner's ineffective assistance claim is that defense counsel was ineffective for failing to "raise the issue that the complaint on record . . . was signed by a local sheriff or officer named John J. Kerwick who is not authorized by law . . . to file or enforce federal law . . . within the meaning of Section 2510(7) of Title 18." (Pet. at 7.) Defense counsel was not remotely ineffective for failing to raise this issue, as doing so would have been frivolous.

As an initial matter, Petitioner misrepresents the record.  Officer Kerwick is a Task Force Officer with the DEA.  (Dkt. 1 ¶ 4, 21-CR-66).  He therefore is a federal law enforcement officer.  *Cf. e.g.*, *United States v. Luna*, 649 F.3d 91, 101–02 (1st Cir. 2011) (task force officers are federal officers for purposes of provisions of Title 18 prohibiting violent crimes against federal law enforcement officers); *Guerrero v. Scarazzini*, 274 F. App'x 11, 12 n.1 (2d Cir. 2008) (task force officers are federal officers for purposes of civil rights claims, which thus must be brought under *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), not under 42 U.S.C. § 1983).

Petitioner also is wrong that the law requires the affiant on a complaint to be a federal law enforcement officer.[5]  No rule requires the affiant swearing out a criminal complaint to be a federal law enforcement officer, or even to work in law enforcement at all.  Of course, "[a] private citizen cannot prosecute a criminal action in federal court," only a federal prosecutor can.  *See, e.g., Uppal v. Bank of Am.*, No. 18-CV-3085, 2018 WL 10323035, at *2 (S.D.N.Y. May 2, 2018) (collecting cases).  But here the complaint was approved and filed by a federal prosecutor, and the only further requirements imposed by the rules are that it be "a written statement of the essential facts constituting the offense charged," and that it be "made under oath" before a magistrate judge.  Fed. R. Crim. P. 3; *see also* Fed. R. Crim. P. 4(a) (requiring issuance of an arrest warrant where "the complaint or one or more affidavits filed with the complaint establish probable cause").  Petitioner does not dispute, and could not dispute, that these requirements were met here.  This is in contrast with the rule governing search warrants, which provides that warrants must be sought by a "federal law enforcement officer or an attorney for the government."  Fed. R. Crim. P. 41(d)(2)(A).

Therefore, a challenge to the Complaint on the false claim that the affiant was not a federal law enforcement officer would have been met with swift rejection.  Counsel's failure to do so was therefore not ineffective, and Petitioner therefore was not prejudiced.

III.  Conclusion

For the reasons discussed herein, the Petition is dismissed with prejudice.

---

[5] 18 U.S.C. § 2510(7), which Petitioner cites, has nothing to do with criminal complaints. That subsection defines "[i]nvestigative or law enforcement officer" for purposes of Title III wiretap applications.

As Petitioner has not made a substantial showing of the denial of a constitutional right, a Certificate of Appealability shall not be issued, *see* 28 U.S.C. § 2253(c)(2); *Lucidore v. N.Y. State Div. of Parole*, 209 F.3d 107, 111–12 (2d Cir. 2000), and the Court further certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this judgment on the merits would not be taken in good faith, *see Coppedge v. United States*, 369 U.S. 438, 445 (1962) ("We consider a defendant's good faith . . . demonstrated when he seeks appellate review of any issue not frivolous."); *Burda Media Inc. v. Blumenberg*, 731 F. Supp. 2d 321, 322–23 (S.D.N.Y. 2010) (citing *Coppedge* and finding that an appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith).

The Clerk of Court is respectfully directed to enter judgment for Respondent in Case No. 22-CV-4040, close Case No. 22-CV-4040, and mail a copy of this Opinion to Petitioner.

SO ORDERED.

Dated: September 30, 2025
White Plains, New York

KENNETH M. KARAS
United States District Judge